191 S.E.2d 692 (1972)
282 N.C. 71
In the Matter of the Ad Valorem Valuation of PROPERTY Located at 411-417 West Fourth Street (F. W. Woolworth Company, Lessee), IN FORSYTH COUNTY, North Carolina, For the Year Beginning January 1, 1968.
No. 40.
Supreme Court of North Carolina.
October 11, 1972.
*695 P. Eugene Price, Jr., Winston-Salem, for plaintiff.
Hatch, Little, Bunn, Jones & Few, by James C. Little and Harold W. Berry, Jr., Raleigh, for defendant.
*696 LAKE, Justice.
Since this appeal relates to the valuation of the property for the tax year 1968, all citations herein to the General Statutes, both as to section number and as to content, refer to the statutes in effect prior to the revision of the Machinery Act by the General Assembly of 1971.
There was no error in the denial by the State Board of Assessment of the county's motion to dismiss the appeal by Woolworth to that Board. G.S. § 105-327(g) (2) provided: "The board shall, on request, hear any and all taxpayers who own or control taxable property assessed for taxation in the county in respect to the valuation of such property or the property of others." (Emphasis added.) G.S. § 105-329 provided: "Any property owner, taxpayer or member of the board of county commissioners may except to the order of the board of equalization and review and appeal therefrom to the State Board of Assessment * * *." (Emphasis added.) G.S. § 105-306(14) and (15) required the listing for taxation of merchandise held for the purpose of sale and of office furniture, fixtures and equipment. The record shows that Woolworth, by virtue of its lease, had control of the lot and building in question and that it operated therein a retail store. The State Board of Assessment could take judicial notice of the fact that Woolworth had in the store a stock of merchandise and equipment which it was required by law to list for taxation. G.S. § 143-318. Thus, Woolworth was clearly a taxpayer who both owned and controlled taxable property assessed for taxation in the county.
It is well established that the right to request a hearing by and relief from the County Board of Equalization and Review is not limited to the owner in fee simple of the property, the valuation of which is in question. In re King, 281 N.C. 533, 189 S.E.2d 158; King v. Baldwin, 276 N.C. 316, 172 S.E.2d 12. Nothing in these decisions lends support to the idea that this right is limited to such owner and other taxpayers seeking a higher valuation upon that property.
The Rules of Civil Procedure do not apply to proceedings before the State Board of Assessment. G.S. § 1A-1, Rule 1. However, the record shows that Woolworth, by the terms of its lease, was obligated to pay at least a portion of the taxes assessed upon this lot and building. Thus, it was a real party in interest. This Court considered upon its merits an appeal by a lessee, required by its lease to pay taxes on the property, from a judgment of the superior court affirming an order of the State Board of Assessment, which, in turn, had affirmed the denial by the County Board of Equalization and Review of the lessee's petition for reduction in the valuation of the property, no question being raised therein as to the standing of the lessee so to proceed. In re Property of Pine Raleigh Corp., 258 N.C. 398, 128 S.E.2d 855.
G.S. § 105-294 required that all property, real and personal, be valued at its true value in money; that is, the amount of cash or receivables for which the property can be sold in such manner as such property is usually sold. There is no distinction between owners of real and personal property as to their right to insist upon equality of valuation or as to their standing to pursue the remedies provided in the Machinery Act for error in the valuation of properties.
There is likewise no merit in the county's contention that the State Board of Assessment erred in receiving and in taking into consideration evidence that the second floor of the building was vacant and not in condition for rental or evidence that, due to the continuing economic deterioration of downtown Winston-Salem, Woolworth's volume of sales in this building had declined steadily over the past several years. Again, there is no merit in the county's contention that, if the income approach be used to determine the valuation of the property, the determination should *697 be made on the basis of the rent actually payable under the existing lease rather than the fair rental value of the property under conditions existing upon the valuation date.
The mere fact that the lessee of the building elects not to use or to sublet a portion of it does not, of course, affect the valuation of the building for tax purposes. In this case, however, the evidence goes much further. It is to the effect that the second floor of this building is in such condition that it could not be used or rented without substantial renovation and improvement and that the majority of second floor spaces in the neighborhood had been vacant for several years. These are clearly material circumstances in the determination of the value of the building.
The statutory standard for valuation of property for tax purposes was the amount for which it can be sold in the manner that such property is usually sold. G.S. § 105-294. In determining this, the assessors were directed by G.S. § 105-295 to take into consideration "its advantages as to location * * * adaptability for * * * commercial or industrial uses, the past income therefrom, its probable future income * * * and any other factors which may affect its value." G.S. § 105-295. The statutory direction to consider advantages inherent in the location of the property necessarily requires consideration of any disadvantages inherent in such location. Consideration of the adaptability of property to commercial uses necessarily requires consideration of its declining attractiveness for such use. Consideration of past income and probable future income clearly requires that attention be given to an established declining trend in income. Furthermore, the statute expressly directs that consideration be given to "any other factors which may affect" the value of the property.
The State Board of Assessment, like other administrative agencies, is authorized, in the hearing of an appeal concerning valuation of property, to take notice of "judicially cognizable facts." G.S. § 143-318. It is a matter of common knowledge that in recent years retail stores in downtown metropolitan areas have suffered severely from the competition of shopping centers located in the outer edges of the city where ample parking facilities are available. For the State Board of Assessment to ignore the effect of this circumstance upon the sale value of store buildings in the downtown area of a large city would be to shut its eyes to an established fact of common knowledge. The State Board of Assessment is neither required nor permitted to do this in discharging its duties under G.S. § 105-329.
The economic blight of a downtown area in a city is not the result of a general, county-wide economic decline, affecting all properties in the county substantially alike. It is a disturbance of a preexisting relation between such downtown areas and other areas in the city or county. The policy of equality in valuations, commanded by G.S. § 105-294, compels the assessors and, upon an appeal, the State Board of Assessment to take this economic development into account when revaluing property for tax purposes.
The ability of the property in question to produce income is clearly one of the elements to be considered in determining its value. In re Property of Pine Raleigh Corp., supra. In the Pine Raleigh case, the petitioner contended that the valuation should be reduced because the petitioner had made an improvident long term sublease whereby it was receiving a substantially lower rental income than the property could otherwise have been rented for at the time of the valuation. This Court, speaking through Justice Rodman, said:
"But the income referred to is not necessarily actual income. The language [GS 105-295] is sufficient to include the income which could be obtained by the proper and efficient use of the property. * * *

*698 "Net income produced is an element which may properly be considered in determining value, but it is only one element. If it appears that the income actually received is less than the fair earning capacity of the property, the earning capacity should be substituted as a factor rather than the actual earnings. The fact-finding board can properly consider both."
The same reasoning permits the State Board of Assessment, upon an appeal such as the present, to substitute the fair rental value of the property, on the valuation date, for the actual rent payable under an existing long term lease, which present conditions show to have been improvident from the point of view of the tenant. It is to be observed that in this instance the State Board of Assessment did not reduce the tax valuation to a capitalization of the fair rental to which Woolworth's expert witness testified, but valued the property at a figure between such value and that placed upon the property by the county. Thus, the State Board of Assessment, having both before it, evidently considered both the actual rental income under the lease and the fair rental at the time of valuation. This Court approved a valuation based upon consideration of both in the Pine Raleigh case.
The findings by the State Board of Assessment in these respects are supported by the evidence and, in turn, support the conclusion as to its valuation of the property. That being true, the valuation fixed by the State Board of Assessment is conclusive. Neither the superior court nor this Court is authorized to make findings at variance with the findings of the State Board so supported. In re Appeal of Reeves Broadcasting Corp., 273 N.C. 571, 160 S.E.2d 728; In re Property of Pine Raleigh Corp., supra.
The county contends that its appraisers acted properly in selecting replacement cost as the more appropriate basis for valuation of buildings since much of the property in the entire county is not income producing. G.S. § 105-295, however, expressly directs that consideration be given to the income producing ability of the property where appropriate. Obviously, this is an element which affects the sale of properties, the purpose of which is the production of income. To conform to the statutory policy of equality in valuation of all types of properties, the statute requires the assessors to value all properties, real and personal, at the amount for which they, respectively, can be sold in the customary manner in which they are sold. Not every attribute specified in G.S. § 105-295 is applicable to every piece of property in the county. The statute contemplates that the assessors, and the State Board of Assessment on appeal, will consider those which apply to each specific piece of property in appraising its "true value in money." See, In re Appeal of Reeves Broadcasting Corp., supra, at p. 578, 160 S.E.2d 728.
G.S. § 143-318 requires the rules of evidence, as applied in the superior court and the district court divisions of the General Court of Justice, to be followed by the State Board of Assessment in the hearing of an appeal from a county board of equalization and review. In re McLean Trucking Co., 281 N.C. 375, 189 S.E.2d 194. The record discloses no material error in the admission of evidence before the State Board. In re McLean Trucking Co., supra, is distinguishable from the present case. Here, the protestant's appraiser, Mr. Nicosia, testified that he personally inspected the property to be appraised and testified as to his own opinion as to its value. His testimony as to the condition of the second floor of the building and as to the large number of vacant stores in the vicinity was based upon his own observations. His testimony that he was told that these vacancies had continued for a substantial period was hearsay, but this is not sufficient ground for the rejection of his appraisal. It is a matter of common knowledge that the general appearance of *699 buildings in an area would indicate to such an appraiser whether existing vacancies had been of substantial duration. Furthermore, the record does not show any objection to his testimony as to what the people to whom he talked in the course of his appraisal told him about these vacancies.
We have carefully examined the record in connection with each contention of the county and find therein no error by the State Board of Assessment which would have permitted the superior court to reverse its order or remand the matter for further proceedings.
No error.